IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EVELYN A. SANTANA, f/k/a EVELYN A. HATCH,
D.P.C.S., N.R.C.S, J.A.C.S.,

|                          |            |                       |
|--------------------------|------------|-----------------------|
|                          | Plaintiffs, | OPINION AND ORDER     |
| v.                       |            |                       |
|                          |            | 15-cv-89-wmc          |
| BILLY R. HATCH,          |            |                       |
|                          | Defendant. |                       |

In this civil action brought under the Immigration and Naturalization Act, 8 U.S.C. § 1183a, plaintiffs Evelyn A. Santana, D.P.C.S., N.R.C.S. and J.A.C.S. contend that defendant Billy R. Hatch has violated his obligation to support them at 125% of the federal poverty level. Plaintiffs have filed a motion for summary judgment on liability, damages and her request for specific performance and attorney fees. (Dkt. #10.) In response, defendant concedes that he is liable for failing to meet his support obligations under the Act. He also concedes that he owes plaintiffs the amount they demand for the year 2013. Accordingly, the court will grant plaintiffs' motion for summary judgment with respect to liability and to the damages demanded for 2013.

Defendant disputes the amount of damages he owes plaintiffs for 2012 and 2014, however, and also disputes whether plaintiffs are entitled to an order of specific performance and attorney fees. As discussed below, the court agrees with plaintiffs regarding the 2014 damages, as well as to their entitlement to specific performance and attorney fees. However, the court will order additional briefing and submission of

evidence from the parties regarding 2012, as well as the most appropriate form for an order of specific performance in this case.

UNDISPUTED FACTS[1]

Plaintiff Evelyn Santana married defendant Billy Ray Hatch in Spain in 2009. In consideration for Santana and her children becoming permanent residents of the United States, Hatch then signed an "I-864 affidavit," agreeing to support Santana and her minor children at 125% of the federal poverty level. Santana and her children became permanent residents in 2010 and remain so to this day. On May 2, 2012, Santana separated from Hatch, and on December 8, 2013, they divorced. Pursuant to the judgment of divorce, Hatch paid Santana a lump sum of $4,038. Hatch has not paid Santana or her children any other monetary support since May 1, 2012.

OPINION

The Immigration and Nationality Act forbids admission to the United States of any immigrant who "is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A); *see also id.*, § 1601(2)(A), (5). This provision is implemented by requiring a person who sponsors an immigrant for admission to "execute an affidavit of support." 8 C.F.R. § 213a.2(a), (b); *see also* 8 U.S.C. § 1182(a)(4)(C)(ii). The affidavit, called a Form I-864, is in the form of a contract between the sponsor and the United States. 8 C.F.R. § 213a.2(d). The affidavit obligates the sponsor to support the sponsored

---

[1] The following facts are material and undisputed. They are drawn from the parties' proposed findings of fact and responses.

2

immigrant at 125% of the poverty income level indefinitely, unless one of the five scenarios applies:  (1) the sponsor dies; (2) the sponsored immigrant dies; (3) the sponsored immigrant becomes a United States citizen; (4) the sponsored immigrant departs the United States permanently; or (5) the sponsored immigrant is credited with 40 qualifying quarters of work.  The Act expressly authorizes the sponsored immigrant to sue the sponsor in federal court to enforce the affidavit.  *Id.* § 1183(a)(1)(C).

In this case, there is no dispute that defendant signed I-864 affidavits of support for plaintiffs and that none of the conditions that might terminate his obligation of support apply.  Accordingly, plaintiffs are entitled to summary judgment on their claim that defendant is obligated to support them in accordance with the requirements of the affidavits.  The only disputes concern the relief to which plaintiffs are entitled. Specifically, plaintiffs request damages for 2012, 2013 and 2014, as well as an order of specific performance and attorney fees.  The court addresses each request below.

## A.    2012

Plaintiffs' household income was $18,293.00 in 2012.  The 125% poverty level for a family of four for that year was $28,812.50.[2] As plaintiffs concede, however, they lived with defendant until May 1, 2012, on 121 days out of 365 days.  Plaintiffs offer three suggestions for calculating damages in light of the parties sharing a household for part of the year:

---

[2] The 2012 federal poverty level for a family of four was $23,050.

(1)     assume defendant provided only *de minimis* support to plaintiffs from January 1, 2012 until April 20, 2012 and allow plaintiffs to recover $10,519.50;[3]

(2)     assume plaintiffs' income contributed to the shared household expenses from January 1, 2012 to April 30, 2012, and allow plaintiffs' income, as well as 125% of the poverty level, to be prorated for a total in damages of $7,042;[4] or

(3)     assume defendant provided total support for the family, while plaintiffs contributed nothing, from January 1, 2012 to April 30, 2012, requiring plaintiffs' total-year income to be compared against 125% of the poverty level, prorated for the part of the year plaintiffs lived separately from defendant, for an amount of $994.[5]

Plaintiffs argue that option 2 is the fairest way to calculate damages for 2012, because it accounts for the joint contributions to the shared household up to the point of separation. The court would likely agree with plaintiffs, if they had submitted evidence proving earned income during the first 121 days of 2012. Unfortunately, however, plaintiffs submitted only Evelyn Santana's tax return and W2 information showing the *total* income she earned in 2012, but submitted no evidence showing *when* that income was earned. If Santana earned income while she and her children shared a household with defendant, it would be reasonable to conclude that plaintiffs and defendant shared household expenses, assuming defendant has no contrary evidence. However, if Santana

---

[3] This is the difference between 125% of the poverty level and plaintiffs' household income for the year ($28,812.50 - $18,293.00 = $10,519.50).

[4] This calculation assumes that $6,048 of plaintiffs' income went to the shared household for first 121 days of the year, and $12,245 of plaintiffs' income was used to support plaintiffs only for the remaining 245 days of the year. (There were 366 days in 2012.) The prorated amount of 125% of the poverty level for 2445days would be $19,287. The difference between the prorated 125% of the poverty level and prorated amount of plaintiffs' income is $7,042 ($19,287 - $12,245 = $7,042).

[5] The prorated amount of 125% of the poverty level for 245 days is $19,287. The difference between that prorated amount and plaintiffs' income is $994.

did not earn income until after plaintiffs and defendant were separated, damages should be calculated under option 3.[6]  The court will give the parties the opportunity to submit further evidence and argument on this issue.

**B.    2013**

Plaintiffs' household income was $14,219.00 in 2013.  The 125% poverty level for a family of four for that year was $29,437.50.[7]  The parties agree that defendant owes plaintiffs the difference between these amounts, $15,218.50 consistent with the I-864 affidavits of support.

**C.    2014**

Plaintiffs' household income was $18,634 in 2014.  The 125% poverty level for a family of four for that year was $29,812.50.[8]  Plaintiffs contend that defendant owes them the difference between these two amounts, $11,177.50.  Defendant does not dispute plaintiffs' earned household income, but argues that the court should consider as part of plaintiffs' 2014 income, the $4,083 that defendant paid plaintiff Santana in 2014 as part of the divorce judgment.  Specifically, the judgment of divorce ordered defendant to pay Santana $1,538 to reimburse her for an amount that had been intercepted from her 2012 state tax return due to a previous withdrawal of 401k funds, as well as an additional $2,500 to equalize the value of the vehicles as awarded under the divorce. (Dkt. #11-7.)  However, defendant provides no persuasive reason, or really any reason at

---

[6] Neither party is asserting that option 1 should be used.

[7] The 2013 federal poverty level for a family of four was $23,550.

[8] The 2014 federal poverty level for a family of four was $23,850.

all, why the $4,083 should be counted as part of plaintiffs' 2014 income, when part of the payment was intended to reimburse Santana for a prior interception of her 2012 income and the other part was related to personal property distribution in the divorce. Presumably, if plaintiffs had been awarded the vehicles in the divorce, defendant would not be arguing that the court should count the value of the vehicles and any other personal property against his support obligation.   Therefore, the court agrees with plaintiffs that defendant owes them $11,177.50 for 2014, although defendant is also welcome to offer evidence and argue for consideration of this imputed income for 2012.

### D.   Specific Performance

Plaintiffs request specific performance requiring defendant to support them at 125% of the federal poverty level for their household going forward until one of the terminating conditions set forth in the I-864 affidavit is met.   Defendant objects, arguing that although specific performance is a potential remedy under 8 U.S.C. § 1183a(c), plaintiffs have not shown that they are entitled to specific performance.   Defendant argues that this court previously denied a request for specific performance in *Liu v. Mund*, 748 F. Supp. 2d 958 (W.D. Wis. Sept. 21, 2010).

The court agrees with plaintiffs that specific performance is likely an appropriate remedy in this case.   Defendant has refused to provide any support to plaintiffs, despite conceding that he is liable to do so under the I-864 affidavit of support.   Additionally, as the court later determine in *Liu* after that case was remanded by the Seventh Circuit, specific performance is an appropriate remedy in these types of cases because, as the Seventh Circuit explained, a sponsor's obligation under the affidavit of support is

indefinite unless one of the terminating conditions applies.  *See Liu v. Mund,* case no. 9-cv-500-wmc, dkt. #124 (W.D. Wis. October 2, 2012) (ordering specific performance).  Accordingly, this court ultimately ordered the defendant in *Liu* to pay the plaintiff 125% of the federal poverty line, adjusted annually as shown at http://aspe.hhs.gov/poverty/index.shtml, until his payment obligations cease.

That being said, this case is slightly more complicated than *Liu,* as the plaintiff in *Liu* earned no income.  Thus, the court ordered the defendant to pay the plaintiff on a monthly or bi-weekly basis.  Here, plaintiffs earn income that appears to vary from month-to-month and year-to-year.  It will be potentially more difficult for defendant to determine his obligation to plaintiffs on a monthly or bi-weekly basis.  Before deciding the most appropriate form of specific performance, the court will invite the parties to provide input as to the most efficient means by which defendant may fulfill his obligations to plaintiffs, presumably either as a monthly or yearly obligation.

### E.    Attorney Fees

Finally, plaintiffs request attorney fees under 8 U.S.C. § 1183a(c).  Defendant does not object to plaintiffs' entitlement to fees, but merely argues that plaintiff should file an appropriate motion under Fed. R. Civ. P. 54(d).  The court agrees that plaintiffs are entitled to fees, and directs plaintiffs to file the appropriate motion under Fed. R. Civ. P. 54(d) after judgment is entered in this case.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment (dkt. #10), is GRANTED IN PART with respect to their claims that: (a) defendant breached his duty to support them at 125% of the federal poverty level under the I-864 affidavits of support he signed on their behalf; and (b) their claims for $15,218.50 for 2013 and $11,177.50 for 2014.

2. The parties may have until May 12, 2016, to submit additional evidence and briefing regarding the appropriate amount of damages for 2012, as well as the form of specific performance that should be ordered.

3. After judgment is entered, plaintiffs may submit a motion for attorney fees under Fed. R. Civ. P. 54(d) and 8 U.S.C. § 1183a(c).

4. The final pretrial conference, scheduled for May 17, 2016, and the trial, scheduled for May 23, 2016 are VACATED.

Entered this 29th day of April, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge