IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EVELYN A. SANTANA, f/k/a EVELYN A. HATCH,
D.P.C.S., N.R.C.S, J.A.C.S.,

                Plaintiffs,                              OPINION AND ORDER

  v.

                                                      15-cv-89-wmc

BILLY R. HATCH,

                Defendant.

---

On April 29, 2016, this court granted a motion for partial summary judgment filed by plaintiff Evelyn Santana and her minor children, claiming that defendant Billy Hatch breached his duty to support them at 125% of the federal poverty level under the I-864 affidavits of support he signed. The court further concluded that plaintiffs were entitled to damages in the amount of $15,218.50 for 2013 and $11,177.50 for 2014. Finally, the court directed the parties to submit additional evidence and briefing regarding the appropriate amount of damages plaintiffs were owed *for 2012*, as well as any form of specific performance that might be ordered. After reviewing the parties' responses, the court concludes that plaintiffs are entitled to $5,064.97 in damages for 2012, as well as an order for specific performance requiring defendant to maintain plaintiffs at 125% of the poverty level on an annual basis, as set forth in more detail below.

      A.      2012

Damages in cases like this one are generally determined by comparing the required level of support owed by defendant (125% of the poverty level) with plaintiffs' income

for a given period. In 2012, plaintiffs' household income was $18,293.00. The 125% poverty level for a family of four for that year was $28,812.50.[1] In 2012, however, plaintiffs lived with defendant from January 1, 2012 until May 1, 2012, or 121 days out of 366 days.[2]

In its April 29 order, the court explained that the fairest way to calculate damages for 2012 would be to compare a prorated 125% poverty level, based on the portion of the year in which the parties were separated, with the income plaintiffs actually earned after their separation. Any income plaintiffs' earned before they were separated, during the first 121 days of 2012, would be considered as contribution to shared household expenses, barring evidence to the contrary. The problem was that plaintiffs submitted no evidence indicating *when* they earned income during 2012, so it was impossible to determine how their total income for that year should be apportioned. Accordingly, the court directed the parties to submit further evidence and argument on the issue.

Both parties responded, stating that they agree with the court's proposed formula for calculating damages for 2012. (Dkt. ##24, 27.) Plaintiffs further submitted evidence showing that their income from January 1, 2012 through April 30, 2012 was $4,070.97, and the amount plaintiffs earned during the remainder of the year was $14,222.03. Defendant does not dispute these amounts. The prorated amount of 125% of the poverty level for the same period (May 1 through December 31) is $19,287. The difference between the prorated 125% poverty level and amount of plaintiffs' earned

---

[1] The 2012 federal poverty level for a family of four was $23,050.

[2] 2012 was a leap year.

income is $5,064.97 post-separation. Accordingly, plaintiffs are entitled to $5,064.97 in damages for 2012.

### B. Specific Performance

In addition to damages for defendant's past failure to provide the required support, plaintiffs seek specific performance requiring defendant to support them at 125% of the federal poverty level for their household going forward until one of the terminating conditions set forth in the I-864 affidavits is met. In its April 29 order, the court concluded that specific performance may be appropriate, but that it was not clear what form specific performance should take in this case. In particular, plaintiffs' earned income appears to vary from month-to-month and year-to-year, making it difficult for defendant to determine his obligation on a bi-weekly or even a monthly basis. Thus, the court directed the parties to provide input as to the most efficient means by which defendant may fulfill his obligations to plaintiffs.

In response, defendant proposes that any order for specific performance be on a yearly basis, requiring plaintiffs to submit proof of household income at the end of each year, the federal poverty level for that year, and a calculation as to the amount owed. Any amount defendant owes to plaintiffs would then be repaid over the course of the following year in monthly increments.

For their part, plaintiffs similarly propose that performance be ordered on a yearly basis as a general rule, particularly because plaintiffs are currently financially stable enough to maintain their household above the poverty level. In contrast, however, plaintiffs further propose that they be allowed to provide notice of a need for specific

performance in the event that plaintiffs find themselves below 125% of the poverty level for a period of more than 3 consecutive months. Similarly, they propose that in that event, defendant would be required to provide monthly payments until such time as plaintiffs' monthly income rises above the 125% level once more.

Under the circumstances, the court concludes that an order of specific performance on a yearly basis is appropriate. Plaintiffs have shown the determination and ability to earn income, as well as support themselves, despite defendant's obligations to provide minimal support. Currently, Evelyn Santana has a steady job that provides income sufficient to keep her and her family above 125% of the poverty level. (*See* Santana Aff. ¶ 4, dkt. #26.) Thus, at least as of now, there appears to be no justification for requiring defendant to make specific performance on a monthly or bi-weekly basis. On the contrary, as defendant points out, such a requirement *could* lead to an overpayment to plaintiffs.

For similar reasons, the court declines plaintiffs' suggestion that they be given the option of requesting specific performance if their income drops below the 125% poverty level for more than 3 months. Such an option could also lead to overpayments and complications, depending on plaintiffs' income in the previous or subsequent months. Finally, plaintiffs have not shown that such relief is necessary under the circumstances.

Accordingly, defendant will be required to maintain plaintiffs at 125% of the federal poverty level, adjusted annually as shown at http://aspe.hhs.gov/poverty/index.shtml, until: (1) defendant's death; (2) plaintiffs' death; (3) plaintiffs become U.S. citizens; (4) plaintiffs can be credited with 40 quarters

of work as defined in 8 U.S.C. § 1183a(3); or (5) plaintiffs depart the United States permanently. (*See* I-864 Affidavits, dkt. #11-1 – 11-4). In order to accomplish this, plaintiffs will be required to provide defendant proof of household income by March 1 of each year, along with the federal poverty level for the corresponding year and the specific amount of support they believe is owed by defendant. Defendant will be required to pay any amount owed to plaintiffs, in equal monthly installments, by December 31st of the same year in which the request is received. Finally, plaintiffs will be required to notify defendant immediately if any circumstances occur that would terminate defendant's obligation of support under I-864 Affidavits.

ORDER

IT IS ORDERED that:

1. Defendant is directed to pay damages to plaintiffs in the total amount of $31,460.97.

2. Defendant is directed to maintain plaintiffs at 125% of the poverty level, adjusted annually as shown at http://aspe.hhs.gov/poverty/index.shtml, until (1) defendant's death; (2) plaintiffs' death; (3) plaintiffs become U.S. citizens; (4) plaintiffs can be credited with 40 quarters of work as defined in 8 U.S.C. § 1183a(3); or (5) plaintiffs depart the United States permanently. (*See* I-864 Affidavits, dkt. #11-1 – 11- 4).

3. Plaintiffs must provide defendant proof of household income by March 1 of each year, along with the federal poverty level for the corresponding year and the specific amount of support they believe is owed by defendant.

4. Defendant must pay any amount owed to plaintiffs, in equal monthly installments, by December 31 of the same year in which the request is received.

5. Plaintiffs must notify defendant immediately if any circumstances occur that would terminate defendant's obligation of support under I-864 Affidavits.

Entered this 13th day of December, 2016.

                BY THE COURT:

                /s/
                _____
                WILLIAM M. CONLEY
                District Judge